**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER SIMONI, individually and on behalf of all those similarly situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) ) |
| Hi-Tech Pharmaceuticals, Inc., Hi-Tech Nutraceuticals, LLC., Aneeqa Farid, Ariana Jimenez, Ashley Kaltwasser, Cindy Prado, Etila Santiago, Georgina Mazzeo, Jen Selter, Olga Safari, Sephora Maria Noori, Nerymar Taneh Gimenez, | ) ) Class Action ) Jury Trial Demanded ) ) ) ) |
| Defendants. | ) ) ) ) |

_____

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**
_____

Plaintiff, JENNIFER SIMONI, on behalf of herself and all those similarly situated, brings this Class Action Complaint against HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC., ANEEQA FARID, ARIANA JIMENEZ, ASHLEY KALTWASSER, CINDY PRADO, ETILA SANTIAGO, GEORGINA MAZZEO, JEN SELTER, OLGA SAFARI, SEPHORA MARIA NOORI, and NERYMAR TANEH GIMENEZ alleging as follows:

**INTRODUCTORY STATEMENT**

1.     This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC (together "HI-TECH") and so-called "Influencers" illegally promoting Hi-Tech products on social media: ANEEQA FARID, ARIANA JIMENEZ, ASHLEY KALTWASSER, CINDY PRADO, ETILA SANTIAGO, GEORGINA MAZZEO, JEN SELTER, OLGA SAFARI, SEPHORA MARIA NOORI, and NERYMAR TANEH GIMENEZ (together "Influencers").

2.     This action is arising from the deceptive, unfair and misleading promotion of Hi-Tech products in the state of Illinois, and throughout the United States.

3.     During the Class Period (defined below), the Influencers misrepresented the material connection they have with HI-TECH by endorsing, promoting and recommending Hi-Tech branded products ("Hi-Tech products") without disclosing the fact that they were paid to do it, a practice that is highly unfair and deceptive.

4.     In in order to artificially inflate the prices for the Hi-Tech products, both HI-TECH and the Influencers devised a scheme in which the Influencers will endorse the Hi-Tech products, by endorsing or recommending them while pretending they are simply disinterested consumers.

5.     Hi-Tech products are sold mostly online, most of their customers being social media users exposed to undisclosed advertising.

6.     Relying on the undisclosed and misleading advertising, Plaintiff and the Class Members (defined below) purchased Hi-Tech products and paid a premium, while the products purchased proved to be of a much lower quality and value than the price paid.

## NATURE OF THE ACTION

7.     Plaintiff, Jennifer Simoni, on behalf of herself and all those similarly situated Class Members seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violation of Illinois Uniform Deceptive Trade Practices Act and Illinois Fraud and Deceptive Practices Act.

## JURISDICTION AND VENUE

8.     This is a class action under Federal Rule of Civil Procedure 23 ("Rule 23") including every purchaser of Hi-Tech products in Illinois and the United States.

9.      A good part of HI-TECH's annual revenue of over US$10,000,000 can be directly attributed to the undisclosed endorsements and deceptive advertising on social media, therefore the estimated damages in this case, over the class period, are of at least US$5,000,000.

10.     The National Class is comprised of at least one million (1,000,000) people who purchased Hi-Tech products during the Class Period (defined below). The Illinois Subclass is comprised of at least one thousand (1,000.00) residents of Illinois that purchased HI-TECH Products during the Class Period (defined below).

11.     The HI-TECH Defendants are citizens of Georgia and Plaintiff is a citizen of Illinois.

12.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at

least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

13.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiff's related state law claims.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants are alleged to perpetrate their illegal conduct, in part, in Cook County, Illinois.

## PARTIES

15.     Plaintiff, JENNIFER SIMONI ("Simoni"), is a citizen of Illinois who resides in Cook County, IL and is otherwise *sui juris*.

16.     Plaintiff brings this action on her behalf and on behalf of all other similarly situated class members.

17.     Defendant HI-TECH PHARMACEUTICALS, INC., is a corporation registered and headquartered in Georgia doing business in the United States including Illinois.

18.     Defendant HI-TECH NUTRACEUTICALS, LLC., is a company registered and headquartered in Georgia doing business in the United States including Illinois.

19.     Discovery will reveal the precise responsibilities and roles of each of the "HI-TECH" entities in connection with the allegations in the Complaint.

20.     Defendant ANEEQA FARID ("Farid") is a citizen of Canada who resides in Toronto, Ontario, and is otherwise *sui juris*. Farid is transacting business in the United States, in Illinois and nationwide over the internet and actively soliciting business in Illinois

and nationwide. Farid's Instagram handle is @aneeqafarid



Source: https://www.instagram.com/p/C-st4UoxbeO/

21. Defendant ASHLEY KALTWASSER ("Kaltwasser") is a citizen of Nevada who resides in Las Vegas County and is otherwise *sui juris*. Kaltwasser is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Kaltwasser's Instagram handle is @ashleykfit



Source: https://www.instagram.com/p/ DCSz3G7PMGe/

22. Defendant CINDY PRADO ("Prado") is a citizen of Florida who resides in

Miami-Dade County and is otherwise *sui juris*. Prado is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Prado's Instagram handle is @cindyprado



Source: https://www.instagram.com/cindyprado/reel/C8m2PT8OWx3/

23.     Defendant Ariana Jimenez, ("Jimenez") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Jimenez is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Jimenez's Instagram handle is @ariana



Source: https://www.instagram.com/p/C7rloIZCXCy/

24.     Defendant JEN SELTER ("Selter") is a citizen of New York who resides in New York County and is otherwise *sui juris*. Setler is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Setler's Instagram handle is @jenselter.



Source: https://www.instagram.com/p/C87J3fzuZgr/

25.     Defendant GEORGINA MAZZEO ("Mazzeo") is a citizen of Florida who resides in Miami-Dada County and is otherwise *sui juris*. Mazzeo is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



Source: https://www.instagram.com/p/C8X5KY7xPG7/

26.     Defendant NERYMAR TANEH GIMENEZ ("Gimenez") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Gimenez is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



Source: https://www.instagram.com/p/C6XwDsYudDH/

27.     Defendant OLGA SAFARI ("Safari") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Safari is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



Source: https://www.instagram.com/p/C8fJjGUPBDU/

28.    Defendant Sephora Maria Noori ("Noori") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Noori is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



Source: https://www.instagram.com/p/C7O4MnRuk75/?img_index=1

29.    Defendant Etila Santiago ("Santiago") is a citizen of Pennsylvania who resides in Allegheny County and is otherwise *sui juris*. Santiago is transacting business in Pennsylvania, Illinois and nationwide over the internet and actively soliciting business in Pennsylvania, Illinois and nationwide.



Source: https://www.instagram.com/p/C7zNgQBOYQ2/

**HI-TECH PHARMA**

30.     Jared Wheat, the founder and president of HI-TECH first came up with the idea of a pharmaceutical company while he was incarcerated at FPC Montgomery serving a 32-month sentence for drug trafficking[1]. He started his own drug manufacturing company in 1997 in Georgia.

31.     The company developed and, according to its website, it acquired a series of small dietary supplement companies: Florida-based Synergy Nutritional Industries in 2005 and Advanced Performance Supplements in 2011. Nittany Pharmaceuticals in Pennsylvania and ALR Industries in California in 2012. Advanced Pharmaceuticals and Nutritionals, FormuTech Nutrition, Innovative Laboratories, Sports One, LG Sciences and iForce Nutrition in 2015.

32.     Shortly after its inception, both HI TECH PHARMACEUTICALS and her founder were subject of multiple investigations, lawsuits and indictments over the years. The same is true about some of the companies acquired by HI-TECH and their owners.

33.     In 2003 HI TECH PHARMACEUTICALS and Jared Wheat were subject of a Complaint for a permanent injunction brought by the United States for preventing the company from selling misbranded drugs. A judgment was entered against the company and Jared Wheat.[2]

34.     In 2006, Jared Wheat was arrested yet again. HI-TECH PHARMACEUTICALS together with 11 individuals were indicted for "Generic" Pill

---

[1] https://hitechpharma.typepad.com/hitech_pharmaceuticals/presidentceo-jared-wheat.html
[2] United States v. Hi-Tech Pharm, et al, case 1:03-cv-02789-RLV, U.S. District Court, Northern District of Georgia (Atlanta)

Fraud Scheme[3]. According to the indictment, Jared Wheat, the principal owner of HI-TECH PHARMACEUTICALS, and the other defendants opened a drug manufacturing facility in Belize and would travel to Belize to manufacture various prescription and controlled substances. The defendants allegedly made approximately 24 different drugs that they marketed through so-called "spam" advertisements over the Internet as authentic generic versions of those drugs being imported from Canada. The drugs included steroids such as "Oxymethelone" and "Stanazolol," along with unapproved versions of controlled drugs such as "Ambien," "Valium," and "Xanax." The defendants also manufactured versions of prescription drugs such as "Viagra," "Cialis," "Lipitor" and "Vioxx." From 2002 through 2004, the defendants allegedly ordered enough active ingredients to manufacture millions of pills, many of which were then shipped into the United States to individuals who purchased the drugs after receiving Internet "spam" and also to various wholesalers of drugs[4].

35.    As a result, HI-TECH PHARMACEUTICALS, INC. forfeited to the U.S. Government following property: $3,000,000.00 in US Currency; all machinery, equipment, supplies and non-herbal pharmaceutical ingredients formerly connected w/operation of Target Data Processing, Ltd in Belize.[5]

36.    Jared Wheat was sentenced in that case on 01/30/2009. *Id.*

37.    In a separate case, in December 2008, the U.S. District Court for the Northern District of Georgia concluded that defendants HI-TECH

---

[3] https://www.justice.gov/archive/criminal/cybercrime/press-releases/2006/wheatIndict.htm
[4] https://www.justice.gov/archive/usao/gan/press/2006/09-20-06.pdf
[5] USA v. Wheat et al, criminal case 1:06-cr-00382-WSD-LTW, U.S. District Court, Northern District of Georgia (Atlanta)

PHARMACEUTICALS, INC. ("Hi-Tech"), , Jared Wheat, and three other defendants were jointly and severally liable for $15,882,436.00 in consumer redress for making deceptive claims about the efficacy and safety of "Thermalean" and "Lipodrene," purported weight-loss products containing ephedra, and "Spontane-ES," a supposed erectile dysfunction (ED) treatment containing yohimbine[6].

38.     Further, in 2017, U.S. District Court Ruled in FTC's Favor, imposing a $40,000,000.00 judgment against, among others, HI-TECH PHARMACEUTICALS, INC. and Jared Wheat for previous Order violations, regarding the marketing of misbranded weight-loss products.

39.     Despite its unsavory reputation and criminal convictions, HI-TECH claims to be the industry leader in Sports Nutrition and to have a "Diet & Energy portfolio" composed of: Fastin®, Lipodrene®, Stimerex-ES®, HydroxyElite®, Viper Hyperdrive®, Dexaprine®,Thermoxyn®, Black Mamba®, Phenadrine® and Lean EFX®."[7]

40.     A cursory search of the U.S. Patent and Trademark Office database showed that approximately half of the trademarks mentioned (i.e. Fastin®, Lipodrene®, Stimerex®, Viper Hyperdrive®) on their website do not belong and were not assigned to HI-TECH but are owned by Jared Wheat as an individual.

41.     Also, HI-TECH claims that: "Hi-Tech Pharmaceuticals is a leading global healthcare supplier that develops, manufactures and distributes over-the-counter (OTC) and prescription pharmaceuticals, nutritional products, active pharmaceutical ingredients

---

[6] https://www.ftc.gov/news-events/news/press-releases/2017/10/us-district-court-rules-ftcs-favor-imposes-40-million-judgment-against-weight-loss-supplement. See also F.T.C. v. National Urological Group Inc. et. al. case 1:04-cv-03294-CAP, U.S. District Court, Northern District of Georgia (Atlanta)
[7] https://hitechpharma.com/pages/about-us

(API) and consumer products with customers throughout the world." [8] However, independent studies do not list HI-TECH in top 50[9] (or top 100[10]) manufacturers of pharmaceuticals.

42. As we can see, deception seems to be part of HI-TECH's ways of doing business, as the company continues to make unsubstantiated claims and use advertising methods that are deceptive.

43. HI-TECH does not have brick-and-mortar stores in the US and relies exclusively on online sales and health store sales, most of which are generated by the undisclosed advertising on social media.

44. While competitors, like Herbalife, are also using influencer marketing, it is a stark difference in the way both companies work. Herbalife, for example is asking the influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" label and comply with the FTC interpretation of the FTC Act.



"Paid partnership"

---

[8] *Id.*

[9] *See* https://www.visualcapitalist.com/cp/worlds-50-largest-pharmaceutical-companies/,

[10] *See* https://companiesmarketcap.com/pharmaceuticals/largest-pharmaceutical-companies-by-market-cap/

45. On the other hand, HI-TECH and the Influencers are completely omitting any reference to the fact that the social media posts are not the Influencer's honest opinion, but rather illegal paid endorsements.

46. Out of the considerable profits obtained by Hi-Tech from this scheme, part of the money is paid to the Influencers for their indispensable role.

## THE FALSE ADVERTISING

47. While the practice employed by HI-TECH and the Influencers is very profitable, it is, nevertheless, illegal. Federal law, and Illinois law, all prohibit such commercial behavior.

48. Plaintiff saw Hi-Tech products being worn or used by Instagram influencers they followed which led to them purchasing Hi-Tech products, which proved to be of an inferior quality compared with the expectations the Plaintiff had and the premiums she paid for the Hi-Tech products.

49. By looking at the posts, prior to making their purchases, Plaintiff was unable to discern the fact that those posts were paid endorsements, rather than organic, honest recommendations by the Influencers.

50. But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Hi-Tech products.

51. In deciding to purchase Hi-Tech products, Plaintiff and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts

Plaintiffs saw mentioned, as required, that the Influencers are nothing more than paid advertisers for the brand.

52.     Aside from repeatedly endorsing the Hi-Tech products the Influencers often try to convince consumers to purchase Hi-Tech products, even directing the consumer to go online and make purchases, by encouraging their followers to "try" or use the product.

53.     This undisclosed advertising has been prevalent on Instagram in the last few years. Defendants are advertising Hi-Tech products on Instagram more than ten times each, without mentioning even once that they are paid (substantial amounts) to endorse HI-TECH and keep it quiet.

## STATEMENT OF FACTS

54.     Social media emerged in the last years as a main source of information and communication[11] for billions of users.

55.     There were an estimated 159 million Instagram users in the United States in 2022[12].

56.     In 2021 the platform engaged over 2 billion monthly users[13].

57.     In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown

---

[11] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[12] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[13] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil*, https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

tremendously, adding 100 million users every few months[14]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[15]

58.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[16].

59.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight. Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[17].

60.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they

---

[14] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[15] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[16] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

[17] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns*. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

are demanding.

61.     According to this business model, a number of carefully selected influencers will pretend to use products from HI-TECH brands and present this fact to their followers, while being properly compensated, without disclosing any material relationship with any HI-TECH entity.

62.     Plaintiff and Class Members purchased such products at inflated prices, exclusively because of the way the Hi-Tech products are advertised on social media and the misleading content of the advertisement.

**THE INFLUENCERS**

63.     Despite being compensated for endorsing HI-TECH and pretending to consume or consuming HI-TECH products, none of the Influencers use the "paid partnership" label suggested by the FTC, making it impossible for a social media user to discern the fact that the post was sponsored.

64.      Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[18]

65.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.

66.     The Defendants are using the "Paid Partnership" label, as well as "#ad" or "#partner" in the caption of other posts, misleading their followers and making them

---

[18] Federal Trade Commission, *supra* note 7.

believe that the posts where they don't use the disclosure, are organic, unpaid endorsements.



"paid partnership"

"#partner"



"paid partnership"

"#ad"

67.     Plaintiff is "following" all the Influencers on Instagram. Plaintiff's decision to purchase HI-TECH products and pay a premium for them was determined by the Influencers she followed, specifically by the Defendants in this case and the fact that they promoted HI-TECH products.

68.     Other influencers illegally endorsing Hi-Tech Products are Brit Manuela (@britmanuela), Cydney Moreau (@cydrrose), Darya Martsemyanava (@dashamart), Melinda London Sharky (@melindalondon), Thelma Ortigoza (@thelmaortigoza), Héloïse Huthart (@ heloisehut), Raphaela Milagres (@raphamilagres), Jessika kolosovas De Souza (@jessikakolosovas), Viktoria (@victoriaasecretss) and many more.

69.     Plaintiff would not have purchased the products if she knew that the Influencers were paid to endorse HI-TECH.

## THE ADVERTISING

70.     Facebook, the parent company of Instagram offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

71.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

72.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to

show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

73.    Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and HI-TECH are going to great lengths to hide the nature of their partnership.

74.    Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

75.    The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

76.    As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[19]

77.    By advertising Hi-Tech products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in Illinois.

78.    By instructing and allowing the influencers to advertise its products without

---

[19] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

making the proper disclosures, HI-TECH is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in Illinois.

## THE PLAINTIFF

79.     Given the fact that HI-TECH products seem to be used by many of the Influencers she followed, after seeing the Influencer's post containing endorsements, without being aware of the fact the endorsements are sponsored, Plaintiff decided to purchase various HI-TECH Products.

80.     Judging by the number of influencers organically using Hi-Tech products, it seems like the products are worth more than the one provided by other dietary supplement companies.

81.     Plaintiff purchased Hi-Tech products and paid a premium for them, compared to the actual value of the products.

82.     Plaintiff purchased online three products (Mesomorph PreWorkout, Creatine Monohydrate and Coffee Trim) on October 4, 2024, and paid a total of $104.85 (not including tax and shipping).

## CLASS ALLEGATIONS

83.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

84.     Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

85.     Plaintiff is filing this lawsuit on behalf of all persons that purchased HI-TECH products online from December 20, 2021, to present ("Class Period").

86. Plaintiff Jennifer Simoni is a citizen of Illinois and seeks to represent two classes composed of and defined as follows:

a. <u>Nationwide Class</u>: All consumers that purchased HI-TECH products in the United States.

b. <u>Illinois Subclass</u>: All Illinois residents that purchased HI-TECH Products.

87. Collectively the members of the Nationwide Class and all Illinois Subclass shall be referred to as "Class Members"

88. The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

89. Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

90. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

91. <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff. At least one million consumers have purchased Hi-Tech products and paid a premium for it in reliance on the Defendants' representations.

92.     Each of the classes represented by Simoni have at least one million members and the joinder of all members is impracticable.

93.     <u>Typicality</u>: Plaintiff's story and her claims are typical for the class and, as the named Plaintiff, she is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

94.     <u>Commonality:</u> Since the whole class purchased Hi-Tech products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

95.     <u>Adequacy</u>: Jennifer Simoni will fairly and adequately protect the interests of each class they represent. Counsel is experienced in class actions and will fairly and competently represent the interests of the class members.

96.     <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
(not plead as a separate cause of action)

97.     By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

98.     By failing to mandate and enforce disclosure of material connections with the Influencers, HI-TECH is in violation of 15 U.S.C. § 45(a).

99.     The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this

Complaint.

## COUNT I: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Simoni and Illinois Subclass)

100. Plaintiff incorporates by reference paragraphs 1-99 of this Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

101. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

102. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

103. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

104. Defendants are a "person" as defined by section 505/1(c) of the ICFA.

105. Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

106. The Hi-Tech products sold online constitute "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

107.    Defendants' misrepresentations and omissions regarding the endorsements obtained by HI-TECH are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

108.    Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2

109.    Defendants violated the ICFA when it misrepresented facts regarding Hi-Tech products. Accordingly, the misrepresentations were the central reason for consumers choosing to purchase Hi-Tech products over other alternatives, and to pay a premium for it.

110.    Plaintiff and Class Members relied upon Defendants' misrepresentations and omissions when they purchased Hi-Tech products.

111.    If Plaintiff and Class Members had been aware of the true characteristics of the Hi-Tech products, or the fact that the Influencers are not honest but that they are paid to endorse the Hi-Tech products, they would not have purchased it.

112.    Defendants also violated section 510/2(a)(5) of the DTPA by representing that Hi-Tech products have characteristics that don't have.

113.    Plaintiff and Class Members saw Defendants' marketing and online advertising materials prior to purchasing Hi-Tech products, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Hi-Tech products.

114.    Defendants' misrepresentations and omissions regarding Hi-Tech products were acts likely to mislead the Plaintiff and Class Members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of

ICFA.

115.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class Members have suffered harm in the form of monies paid in exchange for the Hi-Tech products they purchased because they paid more than what they would have otherwise paid had they know the true nature of the product.

116.    The value of the loss, calculated as the price paid for a Hi-Tech product less the value of the products is $5,000,000 for the entire Illinois Subclass.

117.    Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

### COUNT II: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
#### (On behalf of Plaintiff Simoni and Illinois Subclass)

118.    Plaintiff incorporates by reference paragraphs 1-99 of this First Amended Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above.

119.    At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

120.    Furthermore, Defendants represent that Hi-Tech products have endorsements that it does not have.

121.    Defendants advertise Hi-Tech products with the intent not to sell them as advertised by using the false and misleading advertising and marketing detailed above.

122.    Defendants' false and misleading statements set forth above were made

knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

123.    Accordingly, Defendants have violated the DTPA.

## COUNT III: UNJUST ENRICHMENT
### (On behalf of Plaintiff Simoni, the National Class and the Illinois Subclass)

124.    Plaintiffs incorporate by reference paragraphs 1-99 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

125.    By paying the high prices demanded by HI-TECH, Plaintiffs and Class Members conferred a direct benefit to all the Defendants.

126.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate the Plaintiffs, they would be unjustly enriched as a result of their unlawful act or practices.

127.    It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

128.    Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Illinois, Pennsylvania and California Subclasses, the Plaintiffs request the disgorgement of these ill-gotten money.

129.    Due to Defendants' conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff Simoni, the Nationwide Class and Illinois Subclass)

130.    Plaintiffs incorporate by reference all paragraphs 1-99 of this Complaint as

if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

131. Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiffs to purchase SHIEN products, the Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

132. As a result of Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class Members suffered injury.

## DEMAND FOR JURY TRIAL

133. Plaintiff and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jennifer Simoni, respectfully requests that judgment be entered in her favor and in favor of the Class Members as follows:

a. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;

b. Declaring Defendants in violation of each of the counts set forth above;

c. Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages in excess of $50,000,000;

d. Awarding the Plaintiffs and those similarly situated liquidated damages;

e. Order the disgorgement of ill-gotten monies;

f. Awarding each of the named Plaintiffs a service award;

g.      Awarding pre-judgment, post-judgment, and statutory interest;

h.      Awarding attorneys' fees and costs;

i.      Awarding such other and further relief as the Court may deem just and proper.

Dated: January 23, 2025

Respectfully Submitted,

s/Keith Gibson

Keith L. Gibson, Esq.
KEITH GIBSON LAW P.C.
IL Bar No.: 6237159
586 Duane Street, Suite 102
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: Keith@KeithGibsonLaw.com

Bogdan, Enica, Esq.
KEITH GIBSON LAW P.C.
FL Bar No.: 101934
1200 N Federal Hwy., Ste.375
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: Bogdan@KeithGibsonLaw.com

*Attorneys for the Plaintiff and the Putative Class Members*