UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jennifer Simoni, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 25 CV 795 |
| v. | Judge Lindsay C. Jenkins |
| Hi-Tech Pharmaceuticals, Inc., *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION AND ORDER**

Hi-Tech Pharmaceuticals, Inc. and Hi-Tech Nutraceuticals, LLC (collectively, "Hi-Tech") engage influencers to promote their nutritional products on Instagram. After viewing the influencers' posts, Jennifer Simoni purchased three of Hi-Tech's products. The influencers, however, did not disclose their relationship with Hi-Tech; their posts did not include a disclaimer that they were being paid by Hi-Tech to endorse products. Upon learning this, Simoni filed this putative class action against Hi-Tech and ten influencers,[1] alleging violations of the Illinois Consumer Fraud and Deceptive Practices Act and the Illinois Uniform Deceptive Trade Practices Act, along with common law theories of unjust enrichment and negligent misrepresentation.

Defendants move to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). [Dkt. 22.] For the following reasons, the court grants dismissal for lack of standing.

**I. Background[2]**

Hi-Tech manufactures nutritional products. [Dkt. 1 ¶ 41.][3] According to its website, Hi-Tech is a "leading global healthcare supplier that develops, manufactures and distributes over-the-counter and prescription pharmaceuticals, nutritional products, active pharmaceutical ingredients and consumer products with customers

---

[1] The influencers named in the complaint include Aneeqa Farid, Ariana Jimenez, Ashley Kaltwasser, Cindy Prado, Etila Santiago, Georgina Mazzeo, Jen Selter, Olga Safari, Sephora Maria Noori, and Nerymar Taneh Gimenez.

[2] The following allegations are taken from Simoni's class action complaint. [Dkt. 1.] At the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of Simoni, the non-moving party. *See Div. Six Sports, Inc. v. Finish Line, Inc.*, 928 F.3d 631, 635 (7th Cir. 2019).

[3] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

throughout the world." [*Id.*][4] And Hi-Tech is also said to be an "industry leader in Sports Nutrition." [*Id.* ¶ 39.]

Like many companies, Hi-Tech advertises on Instagram to influence consumer behavior using social media. [*Id.* ¶ 57.] Hi-Tech has taken advantage of Instagram's ability to exert influence by paying influencers, many of whom have hundreds of thousands or millions of followers, to promote Hi-Tech products. [*Id.* ¶¶ 4, 20-29, 46.] Through posts, influencers promote Hi-Tech's nutritional products by recommending them to their followers. [*Id.* ¶ 4.] Yet, according to Simoni, the influencers do not disclose the fact that they are being paid by Hi-Tech—as they should under current guidelines issued by the Federal Trade Commission (FTC). [*Id.* ¶¶ 4, 45, 72.]

Nonetheless, the influencers swayed Simoni's purchasing decisions. After seeing Instagram posts from several influencers she follows, Simoni decided to purchase three products from Hi-Tech: Mesomorph, PreWorkout Creatine Monohydrate, and Coffee Trim. [*Id.* ¶¶ 67, 79, 82.] Simoni didn't know that the influencers were being paid by Hi-Tech; she thought they were mere disinterested consumers of Hi-Tech's products. [*Id.* ¶¶ 45, 49.] This practice, Simoni alleges, is not only false advertising, but also violates guidelines from the FTC requiring influencers to disclose their relationship with brands they endorse. [*Id.* ¶¶ 58, 63, 75-76.] Simoni suggests that the influencers could have properly disclosed their relationship with Hi-Tech—and thus comply with FTC's guidelines—by simply using a "Paid Partnership" label on their posts. [*Id.* ¶¶ 44, 63, 72.] Had she known that the influencers were being paid by Hi-Tech, Simoni alleges, she would not have made the purchases. [*Id.* ¶¶ 50, 79.] Simoni also alleges that the products she purchased are of "inferior quality compared with the expectations [she] had and the premiums she paid." [*Id.* ¶ 48.]

This lawsuit followed. Simoni sued Hi-Tech and ten influencers, alleging violations of the Illinois Consumer Fraud and Deceptive Practices Act (Count I) and the Illinois Uniform Deceptive Trade Practices Act (Count II), along with common law theories of unjust enrichment (Count III) and negligent misrepresentation (Count IV). [*Id.* ¶¶ 100-132.] Though she purchased just three products, Simoni brings this suit as a class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), seeking to represent "[a]ll consumers that purchased Hi-Tech products in the United States." [*Id.* ¶ 86.]

Defendants move to dismiss, arguing that Simoni lacks standing to bring the suit under Rule 12(b)(1) and, alternatively, that the complaint fails to state a claim under Rule 12(b)(6). The court begins and ends its analysis with the jurisdictional question.

---

[4] Despite this assertion, the complaint alleges, Hi-Tech is not even listed in the top 100 manufacturers of pharmaceuticals. [*Id.*]

2

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject-matter of the suit. "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012).

The Seventh Circuit recognizes two types of standing challenges: facial and factual challenges, "each with its own procedural and evidentiary rules." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022). A facial challenge "attacks standing on the pleadings, arguing that the plaintiff lacks standing even if the well-pleaded allegations in the complaint are taken as true." *Id.* (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015)). Whereas a "factual challenge" contends that "there is *in fact* no standing." *Flynn*, 39 F.4th at 953 (emphasis in original).

Here, Defendants mount a facial challenge to jurisdiction because their motion "tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). In analyzing this challenge, the court accepts "all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Silha*, 807 F.3d at 173. The court evaluates only whether the factual allegations "plausibly suggest" the existence of subject-matter jurisdiction under the familiar *Iqbal–Twombly* standard for Rule 12(b)(6). *Id.* at 174; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. Article III Standing

The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It requires that the plaintiff demonstrate that she has a "personal stake in the case" sufficient to justify the exercise of federal judicial power. *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* In a putative class action, all named plaintiffs must demonstrate "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Defendants contend that, accepting as true that Hi-Tech paid the influencers to promote products who in turn failed to disclose their financial relationship with Hi-Tech, Simoni has nonetheless failed to plausibly allege Article III standing because she has not suffered any injury in fact. [Dkt. 23 at 15–19.] Specifically, Defendants argue that Simoni has not suffered a concrete and particularized injury

3

because she got exactly what she paid for—Hi-Tech products that were not in any way defective. [*Id.* at 16–17; Dkt. 43 at 4–5.]

An injury-in-fact must be "concrete, particularized, and actual or imminent." *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022). To be concrete, "an injury must be 'real,' and not 'abstract,' but concrete need not mean tangible." *Id.* (cleaned up) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). Both "tangible" and "intangible" harms may be concrete. *Id.* Traditional tangible harms, including monetary harm, "easily meet the concreteness requirement." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Intangible harms are concrete if the plaintiff's alleged injury bears a 'close relationship' to the sort of harms traditionally recognized by American courts, such as reputational harm." *Id.* (quoting *Spoke*, 578 U.S. at 341).

Simoni maintains that she suffered an economic injury. [Dkt. 1, ¶ 67; Dkt. 42 at 12-14.] She contends that she did not get the benefit of her bargain because she "paid more than what she would have otherwise paid had she knew the true nature of the product" and that her loss is "calculated as the price paid for a Hi-Tech product less the value of the products." [Dkt. 42 at 12.] In this way, her allegations are styled as a benefit-of-the-bargain theory of injury. [*Id.* at 14, 24.] Under this theory, a plaintiff alleges that "she bargained for a product worth a given value but received a product worth less than that value." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018); *see In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) (explaining that an "[e]conomic harm can be a concrete injury sufficient to confer standing" including when, "as a result of a deceptive act or an unfair practice, a plaintiff is deprived of the benefit of his bargain.") (citations and internal quotation marks omitted).

Here, however, Simoni has not alleged that she bargained for a product but received a product worth less than that value. On this point, the Seventh Circuit's decision in *Recalled Abbott* is instructive. There, plaintiffs maintained that some of defendant's infant formula had been contaminated with harmful bacteria when produced at a specific plant. 97 F.4th at 527. Plaintiffs alleged that the presence of the bacteria cost them the benefit of the bargain—they had paid for the formula assuming it was safe. *Id.* at 528. The Seventh Circuit rejected this argument, noting that the plaintiffs had not claimed that any of the products they purchased were contaminated, nor did the formula involve an alleged universal defect. *Id.* at 529 (citing *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011)). This meant that the plaintiffs had "no economic injury because the products they purchased were not rendered valueless; they received the infant formula for which they bargained." *Id.* at 531.

In reaching this conclusion, the Seventh Circuit found support in the Third Circuit's decision in *Johnson & Johnson*, where the court affirmed dismissal of

4

financial harm claims where the plaintiff consumed a product that "functioned for her as expected." *Recalled Abbott*, 97 F.4th at 531 (quoting *Johnson & Johnson*, 903 F.3d at 280–81). "Given that the plaintiff had failed to allege even that the Baby Powder provided her with an economic benefit worth one penny less than what she paid," "she received the benefit of her bargain and had suffered no economic injury." *Recalled Abbott*, 97 F.4th at 531 (cleaned up) (citing *Johnson & Johnson*, 903 F.3d at at 288).

So too here. Simoni received the products for which she bargained, and she does not allege otherwise. She does not, for instance, allege that the quality of Hi-Tech's products she received deviated from the products as advertised. Nor does she allege that the products she bought were ineffective or that they were defective in some way that rendered them valueless. Rather, her theory of injury is rooted in the belief that she suffered economic harm because she was unaware that the influencer-Defendants were paid by Hi-Tech to promote the products. That's buyer's remorse. But "buyer's remorse, without more, is not a cognizable injury under Article III of the United States Constitution." *Johnson & Johnson*, 903 F.3d at 281; *see, e.g., Recalled Abbott*, 97 F.4th at 531.

Simoni resists this conclusion, citing *Sava v. 21st Century Spirits, LLC*, 2024 WL 3161625, at *4 (N.D. Ill. June 25, 2024), for the proposition that "a material difference between a product as advertised and as received constitute a measurable economic injury for purposes of Article III." [Dkt. 42 at 13.] But this proposition does not help Simoni here: she has not alleged any difference between the products as advertised and the products she received. And in any event, *Sava* is inapposite. The influencers in *Sava*, like the influencers in this case, pretended to be disinterested consumers while promoting a vodka product. The influencers in *Sava* not only failed to disclose their relationship with the company, but also misrepresented that the vodka was "handcrafted," had "between 52 and 57 calories per ounce," and that it helped with weight management. 2024 WL 3161625, at *4. The vodka, at least according to the complaint, was around 44 more calories per serving than advertised, and did not have any health benefits. *Id.* Consequently, the plaintiffs alleged "a material difference between a product as advertised and as received", that is, the plaintiffs had alleged they were promised something other than what was in the bottles. *Id.*, at*5 (plaintiffs "understood that they would be receiving a product of a certain quality and with certain attributes but instead received a product that deviated from their expectations").

Simoni's complaint, by contrast, alleges nothing of the sort. She does not, for example, allege that the influencers made any misrepresentations about Hi-Tech's products as compared to what Simoni received. Rather, her complaint alleges that she "saw Hi-Tech products being worn or used by Instagram influencers" causing her to make the purchases, but the products "proved to be of an inferior quality compared with the expectations [Simoni] had and the premiums she paid for the Hi-Tech

5

products." [Dkt. 1, ¶ 48; see also ¶ 81 (Simoni "purchased Hi-Tech products and paid a premium for them, compared to the actual value of the products.")]

The same is true for the other cases Simoni cites. For example, she cites *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849 (N.D. Ill. 2021) and *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010), for the proposition that for an economic injury, she need only allege that she "suffered actual pecuniary loss because she allegedly paid more that the product was worth." [Dkt. 42 at 14.] These cases, however, do not help her cause. In *Freeman*, the court addressed whether the plaintiff had sufficiently alleged damages for her Illinois Consumer Fraud and Deceptive Business Practices Act. In concluding that she had, the court cited allegations that the defendant represented that its orthodontic nipple would improve dental health outcomes when the products did not provide these benefits. *Freeman*, 528 F. Supp. 3d at 865. Similarly, in *Kim*, the Court of Appeals affirmed dismissal of the plaintiff's deceptive practices act claim because the plaintiffs "got the benefit of their bargain and suffered no actual pecuniary harm"—they "agreed to pay a certain price for Carter's clothing, which they do not allege was defective or worth less than what they actually paid." 598 F.3d at 635-366.

In a last-ditch effort to avoid dismissal, Simoni seems to suggest that her economic injury stems from the influencers' violation of FTC guidelines—their failure to disclose that they were being paid by Hi-Tech to promote its products.[5] [Dkt. 42 at 14.] In her complaint, she cites 16 C.F.R. § 255.5(a), which states that "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement, and that connection is not reasonably expected by the audience, such connection must be disclosed clearly and conspicuously." [*See* Dkt. 1, ¶ 64.] True enough. Taking the allegations in the complaint as true, the influencers failed to comply with FTC guidelines. Even so, guidelines like § 255.5 are only "administrative interpretations" of laws enforced by the FTC. 16 C.F.R. § 255.0(a); *see Sava*, 2024 WL 3161625, at *16 ("guides like Section 255.5 are not law; rather, they are only 'administrative interpretations *of laws* administered by the FTC for the guidance of the public in conducting its affairs in conformity with legal requirements.") In any event, a violation of guidelines from an agency, or even a violation of the statute itself, without more, does not establish a concrete, particularized injury necessary to confer standing. "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable

---

[5] The court addresses this argument in the interests of completeness given the parties' briefing. Also, the court observes that the implications of FTC guidelines is actually a merits question—not a jurisdictional one. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 557 (7th Cir. 2021) (courts must use caution to avoid "deciding merits questions when evaluating challenges to jurisdiction").

for legal infractions." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.).

Hi-Tech promised Simoni Mesomorph, PreWorkout Creatine Monohydrate, and Coffee Trim, and those non-defective products were exactly what she got. Because Simoni fails to allege a concrete, particularized injury, she lacks standing to bring this suit.

### B. Leave to Amend

Defendants insist that the court should dismiss Simoni's complaint without leave to amend because there is "no reason to believe that any amended complaint would not suffer the same fatal flaws as her original complaint." [Dkt. 43 at 16.] The court declines to do so. With leave to amend, Simoni could, for instance, allege that the products she purchased deviated from the products as advertised. Ultimately, Simoni might not be able to plausibly plead a concrete, particularized injury necessary to confer standing. But depriving her the opportunity to try runs contrary to the Seventh Circuit's clear guidance to proceed otherwise. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (plaintiffs are ordinarily given at least one opportunity to amend a complaint "[u]nless it is *certain* from the face of the complaint that any amendment would be futile").

## IV. Conclusion

For these reasons, the court concludes that Simoni has failed to meet her burden of pleading sufficient allegations to establish Article III standing. Therefore, the court grants Defendants' motion to dismiss. [Dkt. 22.]

Enter: 25-cv-795
Date: September 10, 2025

_____
Lindsay C. Jenkins