**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER SIMONI, individually and on behalf of all those similarly situated, )<br><br> ) <br><br> )<br>    Plaintiff,    )<br> )<br>v.    )<br> )<br>Hi-Tech Pharmaceuticals, Inc., Hi-Tech )<br>Nutraceuticals, LLC., Aneeqa Farid, Ariana )<br>Blanchard, Ashley Kaltwasser, Cindy Prado, )<br>Etila Santiago, Georgina Mazzeo, Jen Selter, )<br>Olga Safari, Sephora Maria Noori, Nerymar )<br>Taneh Gimenez,    )<br> )<br>    )<br>    Defendants.    )<br> ) | **Civil Action No. 1:25-cv-00795**<br><br>**Class Action**<br>**Jury Trial Demanded**<br><br><br>**Honorable Lindsay C. Jenkins** |

---

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

---

Plaintiff, JENNIFER SIMONI, on behalf of herself and all those similarly situated, brings this First Amended Class Action Complaint against HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC., ANEEQA FARID, ARIANA BLANCHARD, ASHLEY KALTWASSER, CINDY PRADO, ETILA SANTIAGO, GEORGINA MAZZEO, JEN SELTER, OLGA SAFARI, SEPHORA MARIA NOORI, and NERYMAR TANEH GIMENEZ, alleging as follows:

**INTRODUCTORY STATEMENT**

1. This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC (together "HI-TECH") and so-called "Influencers" illegally promoting Hi-Tech products on social media: ANEEQA FARID, ARIANA BLANCHARD, ASHLEY KALTWASSER, CINDY PRADO, ETILA SANTIAGO, GEORGINA MAZZEO, JEN SELTER, OLGA SAFARI, SEPHORA MARIA NOORI, and NERYMAR TANEH GIMENEZ (together "Influencers").

2. This action is arising from the deceptive, unfair and misleading promotion of Hi-Tech products in the state of Illinois, and throughout the United States.

3. During the Class Period (defined below), the Influencers misrepresented the material connection they have with HI-TECH by endorsing, promoting and recommending Hi-Tech branded products ("Hi-Tech products") without disclosing the fact that they were paid to do it, a practice that is highly unfair and deceptive.

4. In in order to artificially inflate the prices for the Hi-Tech products, both HI-TECH and the Influencers devised a scheme in which the Influencers will endorse the Hi-Tech products, by endorsing or recommending them while pretending they are simply disinterested consumers.

5. Hi-Tech products are sold mostly online, most of their customers being social media users exposed to undisclosed advertising.

6. Relying on the undisclosed and misleading advertising, Plaintiff and the Class Members (defined below) purchased Hi-Tech products and paid a premium, while

the products purchased proved to be of a much lower quality and value than the price paid.

## NATURE OF THE ACTION

7. Plaintiff, Jennifer Simoni, on behalf of herself and all those similarly situated Class Members seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violation of Illinois Uniform Deceptive Trade Practices Act and Illinois Fraud and Deceptive Practices Act.

## JURISDICTION AND VENUE

8. This is a class action under Federal Rule of Civil Procedure 23 ("Rule 23") including every purchaser of Hi-Tech products in Illinois and the United States.

9. A good part of HI-TECH's annual revenue of over US$10,000,000 can be directly attributed to the undisclosed endorsements and deceptive advertising on social media, therefore the estimated damages in this case, over the class period, are at least US$5,000,000.

10. The National Class is comprised of at least one million (1,000,000) people who purchased Hi-Tech products during the Class Period (defined below). The Illinois Subclass is comprised of at least one thousand (1,000) Illinois residents that purchased HI-TECH Products during the Class Period (defined below).

11. The HI-TECH Defendants are citizens of Georgia. Plaintiff is a citizen of Illinois.

12. This Court has jurisdiction over this matter under the Class Action Fairness

3

Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

13.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiff's related state law claims.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants are alleged to perpetrate their illegal conduct, in part, in Cook County, Illinois.

## PARTIES

15.     Plaintiff, JENNIFER SIMONI ("Simoni"), is a citizen of Illinois who resides in Cook County, IL and is otherwise *sui juris*.

16.     Plaintiff brings this action on her behalf and on behalf of all other similarly situated class members.

17.     Defendant HI-TECH PHARMACEUTICALS, INC., is a corporation registered and headquartered in Georgia doing business in the United States including Illinois.

18.     Defendant HI-TECH NUTRACEUTICALS, LLC., is a company registered and headquartered in Georgia doing business in the United States including Illinois.

19.     Discovery will reveal the precise responsibilities and roles of each of the "HI-TECH" entities in connection with the allegations in the Complaint.

20.     Defendant ANEEQA FARID ("Farid") is a citizen of Canada who resides in Toronto, Ontario, and is otherwise *sui juris*. Farid is transacting business in the United

4

States, in Illinois and nationwide over the internet and actively soliciting business in Illinois

and nationwide. Farid's Instagram handle is @aneeqafarid.



21.     The post above was viewed by Plaintiff prior to making her purchase and it

is available at https://www.instagram.com/p/C-st4UoxbeO. It was posted on August 15,

2024, and it is available on Instagram, at least until October 1, 2025.

22.     Defendant ASHLEY KALTWASSER ("Kaltwasser") is a citizen of Nevada

who resides in Las Vegas County and is otherwise *sui juris*. Kaltwasser is transacting

business in Illinois and nationwide over the internet and actively soliciting business in

Illinois and nationwide. Kaltwasser's Instagram handle is @ashleykfit.



5

23. The post above was viewed by Plaintiff prior to making her purchase and it is available at https://www.instagram.com/p/DCSz3G7PMGe. It was posted on August 15, 2024, and it is available on Instagram, at least until October 1, 2025.

24. Defendant CINDY PRADO ("Prado") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Prado is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Prado's Instagram handle is @cindyprado.



The post above was viewed by Plaintiff prior to making her purchase and it is available at https://www.instagram.com/cindyprado/reel/C8m2PT8OWx3. It was posted on June 24, 2024, and available on Instagram at least until October 1, 2025.

25. Defendant Ariana Blanchard a/k/a Ariana Jimenez, ("Jimenez") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Jimenez is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Jimenez's Instagram handle is @ariana.

6



26. The post above is available at https://www.instagram.com/p/C7rloIZCXCy/ and was viewed by Plaintiff prior to making her purchase. It was posted on June 1, 2024, and available on Instagram at least until October 1, 2025.

27. Defendant JEN SELTER ("Selter") is a citizen of New York who resides in New York County and is otherwise *sui juris*. Setler is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide. Setler's Instagram handle is @jenselter.



25. The post above was available at https://www.instagram.com/p/C87J3fzuZgr/ and was viewed by Plaintiff prior to making his purchase. It was posted on July 3, 2024,

and available on Instagram at least until January 23, 2025[1].

28.     Defendant GEORGINA MAZZEO ("Mazzeo") is a citizen of Florida who resides in Miami-Dada County and is otherwise *sui juris*. Mazzeo is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



29.     The post above was available at https://www.instagram.com/p/C8X5KY7xPG7/ and was viewed by Plaintiff prior to making her purchase. It was posted on June 1, 2024, and available on Instagram at least until October 1, 2025.

30.     Defendant NERYMAR TANEH GIMENEZ ("Gimenez") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Gimenez is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.

---

[1] The post was removed after this lawsuit was initiated.



31.     The post above is available http://www.instagram.com/p/C6XwDsYudDH and was viewed by Plaintiff prior to making her purchase. It was posted on April 29, 2024, and available on Instagram at least until October 1, 2025.

32.     Defendant OLGA SAFARI ("Safari") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Safari is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



33.     The post above is available at http://www.instagram.com/p/C8fJjGUPBDU and was viewed by Plaintiff prior to making her purchase. It was posted on June 21, 2024,

9

and available on Instagram at least until October 1, 2025.

34.     Defendant Sephora Maria Noori ("Noori") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Noori is transacting business in Illinois and nationwide over the internet and actively soliciting business in Illinois and nationwide.



35.     The post above is available at http://www.instagram.com/p/C7O4MnRuk75 and was viewed by Plaintiff prior to making her purchase. It was posted on May 21, 2024, and available on Instagram at least until October 1, 2025. The post was edited after being posted to include the "Paid Partnership" label.

36.     Defendant Etila Santiago ("Santiago") is a citizen of Pennsylvania who resides in Allegheny County and is otherwise *sui juris*. Santiago is transacting business in Pennsylvania, Illinois and nationwide over the internet and actively soliciting business in Pennsylvania, Illinois and nationwide.

10



37.     The posts above were available at www.instagram.com/p/C7O4MnRuk75 and https://www.instagram.com/p/C3GQn5zuz1M and were viewed by Plaintiff prior to making her purchase. The posts above were available on Instagram from June 4, 2024, and February 8, 2024, respectively, until January 23, 2025[2].

## HI-TECH PHARMA

38.     Jared Wheat, the founder and president of HI-TECH first came up with the idea of a pharmaceutical company while he was incarcerated at FPC Montgomery serving a 32-month sentence for drug trafficking[3]. He started his own drug manufacturing company in 1997 in Georgia.

39.     The company developed and, according to its website, it acquired a series of small dietary supplement companies: Florida-based Synergy Nutritional Industries in 2005 and Advanced Performance Supplements in 2011. Nittany Pharmaceuticals in

---

[2] The post was removed after this lawsuit was initiated.
[3] https://hitechpharma.typepad.com/hitech_pharmaceuticals/presidentceo-jared-wheat.html

Pennsylvania and ALR Industries in California in 2012. Advanced Pharmaceuticals and Nutritionals, FormuTech Nutrition, Innovative Laboratories, Sports One, LG Sciences and iForce Nutrition in 2015.

40.     Shortly after its inception, both HI TECH PHARMACEUTICALS and its founder were subject of multiple investigations, lawsuits and indictments over the years. The same is true with some of the companies acquired by HI-TECH and their owners.

41.     In 2003, HI TECH PHARMACEUTICALS and Jared Wheat were subject of a Complaint for a permanent injunction brought by the United States for preventing the company from selling misbranded drugs. A judgment was entered against the company and Jared Wheat.[4]

42.     In 2006, Jared Wheat was arrested again. HI-TECH PHARMACEUTICALS together with 11 individuals were indicted for "Generic" Pill Fraud Scheme[5]. According to the indictment, Jared Wheat, the principal owner of HI-TECH PHARMACEUTICALS, and the other defendants opened a drug manufacturing facility in Belize and would travel to Belize to manufacture various prescription and controlled substances. The defendants allegedly made approximately 24 different drugs that they marketed through so-called "spam" advertisements over the Internet as authentic generic versions of those drugs being imported from Canada. The drugs included steroids such as "Oxymethelone" and "Stanazolol," along with unapproved versions of controlled drugs such as "Ambien," "Valium," and "Xanax." The defendants also manufactured

---

[4] United States v. Hi-Tech Pharm, et al, case 1:03-cv-02789-RLV, U.S. District Court, Northern District of Georgia (Atlanta)
[5] https://www.justice.gov/archive/criminal/cybercrime/press-releases/2006/wheatIndict.htm

versions of prescription drugs such as "Viagra," "Cialis," "Lipitor" and "Vioxx." From 2002 through 2004, the defendants allegedly ordered enough active ingredients to manufacture millions of pills, many of which were then shipped into the United States to individuals who purchased the drugs after receiving Internet "spam" and also to various wholesalers of drugs[6].

43. As a result, HI-TECH PHARMACEUTICALS, INC. forfeited to the U.S. Government following property: $3,000,000.00 in US Currency; all machinery, equipment, supplies and non-herbal pharmaceutical ingredients formerly connected w/operation of Target Data Processing, Ltd in Belize.[7]

44. Jared Wheat was sentenced in that case on January 30, 2009. *Id.*

45. In a separate case, in December 2008, the U.S. District Court for the Northern District of Georgia concluded that defendants HI-TECH PHARMACEUTICALS, INC. ("Hi-Tech"), , Jared Wheat, and three other defendants were jointly and severally liable for $15,882,436.00 in consumer redress for making deceptive claims about the efficacy and safety of "Thermalean" and "Lipodrene," purported weight-loss products containing ephedra, and "Spontane-ES," a supposed erectile dysfunction (ED) treatment containing yohimbine[8].

46. Unfortunately, despite the ruling of the court in Georgia, Hi-Tech continues to claim that "Lipodrene" is "great for weight loss." *Supra* at 22. These claims were found

---

[6] https://www.justice.gov/archive/usao/gan/press/2006/09-20-06.pdf
[7] USA v. Wheat et al, criminal case 1:06-cr-00382-WSD-LTW, U.S. District Court, Northern District of Georgia (Atlanta)
[8] https://www.ftc.gov/news-events/news/press-releases/2017/10/us-district-court-rules-ftcs-favor-imposes-40-million-judgment-against-weight-loss-supplement. See also F.T.C. v. National Urological Group Inc. et. al. case 1:04-cv-03294-CAP, U.S. District Court, Northern District of Georgia (Atlanta)

to be deceptive.

47.     Also Hi-Tech claims that by using Caffeine Trim a consumer can "naturally manage […] weight" as Caffeine Trim provides a "stimulant-free weight management support[9]." The claim is also unsubstantiated and deceptive. The FTC found that weight loss claims related to green coffee beans to be "bogus."[10]

48.     Further, in 2017, U.S. District Court Ruled in FTC's Favor, imposing a $40,000,000.00 judgment against HI-TECH PHARMACEUTICALS, INC. and Jared Wheat, among others, for previous Order violations, regarding the marketing of misbranded weight-loss products.

49.     Despite its unsavory reputation and criminal convictions, HI-TECH claims to be the industry leader in Sports Nutrition and to have a "Diet & Energy portfolio" composed of: Fastin®, Lipodrene®, Stimerex-ES®, HydroxyElite®, Viper Hyperdrive®, Dexaprine®,Thermoxyn®, Black Mamba®, Phenadrine® and Lean EFX®."[11]

50.     A cursory search of the U.S. Patent and Trademark Office database showed that approximately half of the trademarks mentioned (i.e. Fastin®, Lipodrene®, Stimerex®, Viper Hyperdrive®) on its website do not belong and were not assigned to HI-TECH but are owned by Jared Wheat as an individual.

51.     Also, HI-TECH claims that: "Hi-Tech Pharmaceuticals is a leading global healthcare supplier that develops, manufactures and distributes over-the-counter (OTC) and prescription pharmaceuticals, nutritional products, active pharmaceutical ingredients

---

[9] https://hitechpharma.com/products/coffeetrim
[10] https://www.ftc.gov/news-events/news/press-releases/2014/05/ftc-charges-green-coffee-bean-sellers-deceiving-consumers-through-fake-news-sites-bogus-weight-loss
[11] https://hitechpharma.com/pages/about-us

(API) and consumer products with customers throughout the world." [12] However, independent studies do not list HI-TECH in top 50[13] (or top 100[14]) manufacturers of pharmaceuticals.

52.     As we can see, deception seems to be part of HI-TECH's ways of doing business, as the company continues to make unsubstantiated claims and use advertising methods that are deceptive.

53.     HI-TECH does not have brick-and-mortar stores in the US and relies exclusively on online sales and health store sales, most of which are generated by the undisclosed influencer advertising on social media.

54.     While competitors, like Herbalife, are also using influencer marketing, it is a stark difference in the way both companies work. Herbalife, for example is asking the influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" label and comply with the FTC interpretation of the FTC Act.



"Paid partnership"

[12] *Id.*

[13] *See* https://www.visualcapitalist.com/cp/worlds-50-largest-pharmaceutical-companies/,

[14] *See* https://companiesmarketcap.com/pharmaceuticals/largest-pharmaceutical-companies-by-market-cap/

15

55. On the other hand, HI-TECH and the Influencers are completely omitting any reference to the fact that the social media posts are not the Influencer's honest opinion, but rather illegal paid endorsements.

56. Out of the considerable profits obtained by Hi-Tech from this scheme, part of the money is paid to the Influencers for their indispensable role.

## THE FALSE ADVERTISING

57. While the practice employed by HI-TECH and the Influencers is very profitable, it is, nevertheless, illegal. Federal law and Illinois law prohibit such commercial behavior.

58. Plaintiff saw Hi-Tech products being used by Instagram influencers they followed which led to them purchasing Hi-Tech products, which proved to be of an inferior quality compared with the expectations the Plaintiff had and the premiums she paid for the Hi-Tech products.

59. By looking at the posts, prior to making their purchases, Plaintiff was unable to discern the fact that those posts were paid endorsements, rather than organic, honest recommendations by the Influencers.

60. But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Hi-Tech products.

61. In deciding to purchase Hi-Tech products, Plaintiff and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts

16

Plaintiffs saw mentioned, as required, that the Influencers are nothing more than paid advertisers for the brand.

62.     Aside from repeatedly endorsing the Hi-Tech products the Influencers often try to convince consumers to purchase Hi-Tech products, even directing the consumer to go online and make purchases, by encouraging their followers to "try" or use the product.

63.     This undisclosed advertising has been prevalent on Instagram in the last few years. Defendants are advertising Hi-Tech products on Instagram more than ten times each, without mentioning even once that they are paid (substantial amounts) to endorse HI-TECH and keep it quiet.

## STATEMENT OF FACTS

64.     Social media emerged in the last years as a main source of information and communication[15] for billions of users.

65.     There were an estimated 159 million Instagram users in the United States in 2022[16].

66.     In 2021 the platform engaged over 2 billion monthly users[17].

67.     In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown

---

[15] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[16] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[17] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

tremendously, adding 100 million users every few months [18]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[19]

68.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[20].

69.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.  Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[21].

70.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they

---

[18]  Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[19] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[20] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

[21] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns*. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

are demanding.

71.     According to this business model, several carefully selected influencers will pretend to use products from HI-TECH brands and present this fact to their followers, while being properly compensated, without disclosing any material relationship with any HI-TECH entity.

72.     Plaintiff and Class Members purchased such products at inflated prices, exclusively because of the way the Hi-Tech products are advertised on social media and the misleading content of the advertisement.

## THE INFLUENCERS

73.     Despite being compensated for endorsing HI-TECH and pretending to consume or consuming HI-TECH products, none of the Influencers use the "paid partnership" label suggested by the FTC, making it impossible for a social media user to discern the fact that the post was sponsored.

74.      Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[22]

75.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.

76.     The Defendants are using the "Paid Partnership" label, as well as "#ad" or "#partner" in the caption of other posts, misleading their followers and making them

---

[22] Federal Trade Commission, *supra* note 7.

believe that the posts where they don't use the disclosure, are organic, unpaid endorsements.



"paid partnership"

"#partner"



"paid partnership"

"#ad"

77. Plaintiff is "following" all the Influencers on Instagram. Plaintiff's decision to purchase HI-TECH products and pay a premium for them was determined by the Influencers she followed, specifically by the Defendants in this case and the fact that they promoted HI-TECH products.

20

78.     Other influencers illegally endorsing Hi-Tech Products are Brit Manuela (@britmanuela), Cydney Moreau (@cydrrose), Darya Martsemyanava (@dashamart), Melinda London Sharky (@melindalondon), Thelma Ortigoza (@thelmaortigoza), Héloïse Huthart (@ heloisehut), Raphaela Milagres (@raphamilagres), Jessika kolosovas De Souza (@jessikakolosovas), Viktoria (@victoriaasecretss) and many more.

79.     Plaintiff would not have purchased the products if she knew that the Influencers were paid to endorse HI-TECH.

80.     HI-TECH advertises its products to have characteristics they don't have.

81.     For example, Coffeetrim is marketed for weight management[23] while the scientific evidence behind the statements is of poor methodological quality.[24] In fact, medical professionals recommend that it is "better to just skip this one," referring to green coffee extract, the main component in coffee trim[25].

82.     Indeed, in a 2014 press release, the FTC stated that sellers of green coffee bean extract "trick consumers with their phony weight loss claims."

83.     Plaintiff purchased the Coffeetrim product as part of a weight management program, just to find out that the weight loss claims made by HI-TECH and the Influencers are "phony" and "bogus."

84.     Another product with alleged weight management benefits, advertised by HI-TECH and the Influencers is Lipodrene. While advertised to be "great for weight loss," a court in Georgia, found these statements to be deceptive. *Supra* at 46.

---

[23] https://hitechpharma.com/products/coffeetrim (last visited October 1, 2025)
[24] https://pubmed.ncbi.nlm.nih.gov/20871849 (last visited October 1, 2025)
[25] https://health.clevelandclinic.org/green-coffee-bean-extract (last visited October 1, 2025)

85.     Mesomorph PreWorkout, a product purchased by the Plaintiff proved to be unfit for consumption, therefore fundamentally different than advertised. Upon further research, Plaintiff discovered that ingesting Mesomorph PreWorkout poses serious health risks.

86.     Indeed, after examining the label, Simoni noticed that the product contains: 2-aminoisoheptane, also known as DMHA. Dietary supplements containing DMHA are considered adulterated under the FD&C Act[26].

87.     An "adulterated product" is a product that is defective, unsafe, not shown to be safe, filthy, or produced under insanitary conditions.

88.     In fact, in 2019, HI-TECH received a Warning Letter from the Center for Food Safety and Applied Nutrition of the Food and Drug Administration, informing the company and its owner, Jared Wheat (CEO & Founder) that "DMHA it is not generally

---

[26] https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/dmha-dietary-supplements

22

recognized as safe under its conditions of use in your dietary supplement products."

89.     While the Influencers advertise Mesomorph PreWorkout (*Supra* at 36) and HI-TECH sells it on its web site, numerous research studies show that the ingredients in Mesomorph PreWorkout are not safe for human consumption[27], rendering the product defective and valueless.

## THE ADVERTISING

90.     Facebook, the parent company of Instagram offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

91.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

92.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership"

---

[27] https://www.opss.org/article/dmha-octodrine-dietary-supplement-products

23

tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

93. Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and HI-TECH are going to great lengths to hide the nature of their partnership.

94. Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

95. The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

96. As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious **double whammy**. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[28]

97. By advertising Hi-Tech products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in Illinois.

98. By instructing and allowing the influencers to advertise its products without making the proper disclosures, HI-TECH is in violation of of 15 U.S.C. § 45(a) and

---

[28] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023) (emphasis added)

24

therefore in violation of the "little FTC Act" enacted in Illinois.

## VALUE DECEPTIVELLY CREATED

99. Brands advertise on social media in order to increase the retail value of the products they sell.

100. The interest of millions of consumers in a product creates an upward price pressure on the product, which in turn creates a new market equilibrium at the higher price that includes the social media added value.



Fig. 1
Using traditional social media advertising

Fig.2
Using undisclosed paid endorsements

101. The value that the undisclosed paid endorsements (disguised as honest use of the product) adds to a product is higher than the value that traditional social media advertising adds because of many factors.

102. For example, consumers value more honest opinions than those of paid advertising. As such consumers attribute a higher value to a product that is used/consumed by successful people, in this case the Influencers. Therefore, consumers are willing to pay more for such products.

103. Also, complying with the FTC guidelines represents the standard industry practice on Instagram. When the vast majority of Influencers comply with the FTC regulations, it is natural for a consumer to assume the undisclosed paid endorsements are honest opinions, since the disclosures are missing.

104. Another reason relates to the Instagram algorithm; posts that are not marked as advertising are more likely to be organically shared by users, amplifying the upward trend in the price.

105. Also, Instagram promotes posts not marked as advertising through the "Suggested for You" program showing the infringing posts to consumers that are not following the Influencers.

106. As such, when purchasing HI-TECH products, consumers pay a price that includes a portion attributable to the undisclosed advertising. The difference in price is not bargained for by consumers.

107. Other brands, properly disclosing their relationship with social media influencers, sell identical, if not superior, products for a lower price.

108. Generally speaking, studies show that, first, fake reviews make consumers more likely to choose lower quality products, and, second, the estimated welfare losses from such reviews may be the order of **$0.12 for each dollar spent**.[29]" As such, the damages in this case are of at least 12% of the purchase price for the Plaintiff and each class member.

109. The product purchased by Plaintiff, CoffeeTrim, is sold at 60% more than the similar competitor's product[30] ($0.16/pill for HI-TECH Product, versus $0.10/pill for

---

[29] Akesson, J., Hahn, R., Metcalfe, R., & Monti-Nussbaum, M. (2023). *The impact of fake reviews on demand and welfare*. National Bureau of Economic Research. https://doi.org/10.3386/w31836 (emphasis added)

[30] Vitacost Green Coffee Extract 400mg https://www.vitacost.com/vitacost-green-coffee-bean-extract-400-mg-60-capsules compared to Hi-Tech Green Coffee Extract 400mg

competitor), the difference in price being the direct result of undisclosed social media advertising.



110.    The Product Creatine Monohydrate is sold at more than 100% more than the similar competitor's product ($49.99/1000g for HI-TECH product versus $23.99/1000g for competitor's product).



**THE PLAINTIFF**

111.    Given the fact that HI-TECH products seem to be used by many of the Influencers she followed, after seeing the Influencer's post containing endorsements,

https://www.vitacost.com/vitacost-green-coffee-bean-extract-400-mg-60-capsules

without being aware of the fact the endorsements are sponsored, Plaintiff decided to purchase various HI-TECH Products.

112. Judging by the number of influencers organically using Hi-Tech products, it seems like the products are worth more than the ones provided by other dietary supplement companies.

113. Plaintiff purchased Hi-Tech products and paid a premium for them, compared to the actual value of the products.

114. Plaintiff purchased online three products (Mesomorph PreWorkout, Creatine Monohydrate and Coffee Trim) on October 4, 2024, and paid a total of $104.85 (not including tax and shipping).

115. Unfortunately, while Creatine Monohydrate and Coffeetrim were significantly more expensive than the other brands, they proved to be lower in quality, and the performance of the product did not justify the premium paid for it.

116. Further while being advertised for weight management, as explained above, Coffeetrim proved to be ineffective for weight loss.

117. Plaintiff could not use Mesomorph because, instead of being a potent pre-workout nutritional supplement, it proved to be unsafe for consumption.

## CLASS ALLEGATIONS

118. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

119. Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

28

120.    Plaintiff is filing this lawsuit on behalf of all persons that purchased HI-TECH products online from December 20, 2021, to present ("Class Period").

121.    Plaintiff Jennifer Simoni is a citizen of Illinois and seeks to represent two classes composed of and defined as follows:

a.      Nationwide Class: All consumers that purchased HI-TECH products in the United States.

b.      Illinois Subclass: All Illinois residents that purchased HI-TECH Products.

122.    Collectively the members of the Nationwide Class and all Illinois Subclass shall be referred to as "Class Members"

123.    The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

124.    Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

125.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

126.    Numerosity: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff.  At least one

29

million consumers have purchased Hi-Tech products and paid a premium for them in reliance on the Defendants' representations.

127.    Each of the classes represented by Simoni have at least one million members and the joinder of all members is impracticable.

128.    Typicality: Plaintiff's story and her claims are typical for the class and, as the named Plaintiff, she is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

129.    Commonality: Since the whole class purchased Hi-Tech products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

130.    Adequacy: Jennifer Simoni will fairly and adequately protect the interests of each class they represent. Plaintiff's Counsel is experienced in class actions and will fairly and competently represent the interests of the class members.

131.    Superiority: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
(not plead as a separate cause of action)

132.    By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

133.    By failing to mandate and enforce disclosure of material connections with the Influencers, HI-TECH is in violation of 15 U.S.C. § 45(a).

134.     The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

## COUNT I: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Simoni and Illinois Subclass)

135.     Plaintiff incorporates by reference paragraphs 1-134 of this Amended Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

136.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

137.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

138.     The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

139.     Defendants are a "person" as defined by section 505/1(c) of the ICFA.

140.     Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

141.     The Hi-Tech products sold online constitute "merchandise" under the

meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

142.     Defendants' misrepresentations and omissions regarding the endorsements obtained by HI-TECH are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

143.     Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2

144.     Defendants violated the ICFA when it misrepresented facts regarding Hi-Tech products. Accordingly, the misrepresentations were the central reason for consumers choosing to purchase Hi-Tech products over other alternatives, and to pay a premium for it.

145.     Plaintiff and Class Members relied upon Defendants' misrepresentations and omissions when they purchased Hi-Tech products.

146.     If Plaintiff and Class Members had been aware of the true characteristics of the Hi-Tech products, or the fact that the Influencers are not honest but that they are paid to endorse the Hi-Tech products, they would not have purchased them.

147.     Defendants also violated section 510/2(a)(5) of the DTPA by representing that Hi-Tech products have characteristics that don't have.

148.     Plaintiff and Class Members saw Defendants' marketing and online advertising materials prior to purchasing Hi-Tech products, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Hi-Tech products.

149.     Defendants' misrepresentations and omissions regarding Hi-Tech products

32

were acts likely to mislead the Plaintiff and Class Members acting reasonably under the circumstances and thus constitute unfair and deceptive trade practices in violation of ICFA.

150. As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class Members have suffered harm in the form of monies paid in exchange for the Hi-Tech products they purchased because they paid more than what they would have otherwise paid had they know the true nature of the product.

151. The value of the loss, calculated as the price paid for a Hi-Tech product less the value of the products is $5,000,000 for the entire Illinois Subclass.

152. Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

### COUNT II: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Simoni and Illinois Subclass)

153. Plaintiff incorporates by reference paragraphs 1-134 of this First Amended Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above.

154. At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

155. Furthermore, Defendants represent that Hi-Tech products have endorsements that they do not have.

156. Defendants advertise Hi-Tech products with the intent not to sell them as advertised by using the false and misleading advertising and marketing detailed above.

157. Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

158. Accordingly, Defendants have violated the DTPA.

## COUNT III: UNJUST ENRICHMENT
### (On behalf of Plaintiff Simoni, the National Class and the Illinois Subclass)

159. Plaintiffs incorporate by reference paragraphs 1-134 of this Amended Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

160. By paying the high prices demanded by HI-TECH, Plaintiff and Class Members conferred a direct benefit to all the Defendants.

161. Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate the Plaintiff and Class Members, they will be unjustly enriched as a result of their unlawful act or practices.

162. It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

163. Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Illinois, Pennsylvania and California Subclasses, the Plaintiff requests the disgorgement of this ill-gotten money.

164. Due to Defendants' conduct, Plaintiff and the Class Members are entitled to damages according to proof.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff Simoni, the Nationwide Class and Illinois Subclass)

34

165. Plaintiff incorporates by reference all paragraphs 1-134 of this Amended Complaint as if fully rewritten herein. As set forth above, the Plaintiff asserts this count on her own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

166. Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiff to purchase HI-TECH products, the Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

167. As a result of Defendants' negligent misrepresentations, Plaintiff and the Nationwide Class Members suffered injury.

## COUNT VIII: BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff Pop, the Nationwide Class and the Florida Subclass)

168. Plaintiff incorporate by reference paragraphs 1-134 of this First Amended Complaint as if fully re-written herein. As set forth above, the Plaintiff asserts this count on her own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

169. Defendant HI-TECH provided and express warranty regarding the 85. Mesomorph PreWorkout. It described it to have be appropriate for consumption before exercising.

170. Since the description of the goods was made part of the basis of the bargain an express warranty was created that that the goods shall conform to the description.

171. Plaintiff and Class Members reasonably relied upon said warranties and purchased 85. Mesomorph PreWorkout failed to conform to the Defendant's description as it was unsafe for consumption.

172. As a result of Defendants' breach of express warranty, the Plaintiff and

35

Class Members suffered damages.

## DEMAND FOR JURY TRIAL

173.    Plaintiff and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jennifer Simoni, respectfully requests that judgment be entered in her favor and in favor of the Class Members as follows:

a.    Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;

b.    Declaring Defendants in violation of each of the counts set forth above;

c.    Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages in excess of $5,000,000;

d.    Awarding the Plaintiffs and those similarly situated liquidated damages;

e.    Order the disgorgement of ill-gotten monies;

f.    Awarding each of the named Plaintiffs a service award;

g.    Awarding pre-judgment, post-judgment, and statutory interest;

h.    Awarding attorneys' fees and costs;

i.    Awarding such other and further relief as the Court may deem just and proper.

Dated: October 1, 2025

Respectfully Submitted,

s/Keith Gibson

36

Keith L. Gibson, Esq.
KEITH GIBSON LAW P.C.
IL Bar No.: 6237159
586 Duane Street, Suite 102
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: Keith@KeithGibsonLaw.com

Bogdan, Enica, Esq.
KEITH GIBSON LAW P.C.
FL Bar No.: 101934
1200 N Federal Hwy., Ste.375
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: Bogdan@KeithGibsonLaw.com


*Attorneys for the Plaintiff and the Putative
Class Members*